**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

                 Plaintiff,

v.                                    CRIMINAL ACTION NO. 2:14-cr-00157

TROY LAWRENCE,

                 Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending is the determination of whether there is a factual basis for Defendant's guilty plea to a single-count Information charging him with aggravated identity theft in violation of 18 U.S.C. § 1028A.  For the reasons discussed herein, the Court directs the parties to submit additional briefing regarding the materiality requirement of the predicate offense—18 U.S.C. § 1001(a)(2)—no later than March 13, 2015.

### I.    BACKGROUND

This case relates to Defendant's use of the identification and name of a third party—Michael Lowe—to purchase pseudoephedrine.

"On September 20, 2013, West Virginia State Troopers received an anonymous complaint that Troy Lawrence was growing marijuana and making methamphetamine in his residence at 115 Hannan Lane in South Charleston, West Virginia 25309."  (Presentence Investigation Report ("PSR") ¶ 9.)  State Troopers executed a search warrant for this residence on the same day.  (*Id.*

1

¶ 11.)   During the search, State Troopers "discovered various items inside the dishwasher in the kitchen that are commonly used in conjunction with the manufacturing of methamphetamines." (*Id.*)

Defendant "arrived at the residence in a black sedan" during the course of the search and was taken into custody by State Troopers.   (*Id.* ¶ 12.)   State Troopers observed common ingredients used to make methamphetamine in plain view in the passenger seat of the black sedan. (*Id.*)   "After Lawrence exited the vehicle and was in custody, the Troopers searched the vehicle . . . [and] found a receipt for the purchase of Claritin-D from Rite Aid Pharmacy in Charleston, West Virginia, with the purchase time of approximately 5:00PM."   (*Id.* ¶ 13.)   "Troopers then found a driver's license issued to a Michael Lowe" during the search of the black sedan.   (*Id.*)   "The defendant was transported to the West Virginia State Police Department detachment in South Charleston, West Virginia."   (*Id.* ¶ 15.)

"Troopers ran a Board of Pharmacy report for Michael Anthony Lowe."   (*Id.* ¶ 13.)   "The report revealed that Michael Lowe had purchased 22 boxes of pseudoephedrine, since November 11, 2012."   (*Id.*)

"On April 24, 2014, Troopers interviewed Nicole Lowe . . . who advised that she and her husband, Mike Lowe, . . . met the defendant in approximately 2010."   (*Id.* ¶ 18.)   "According to the death certificate from West Virginia Department of Health & Human Resources, Michael Anthony Lowe died on September 26, 2012."   (*Id.* n.3; *see also id.* ¶ 18 ("Ms. Lowe stated that her husband died in 2012.").)

On June 3, 2014, the Government filed an Indictment against Defendant with criminal number 2:14-cr-00092.   (*United States v. Lawrence*, 2:14-cr-92, ECF 1 & 2.)   The Indictment

includes two counts:  (1) Count One charges Defendant with unlawful possession and use of a means of identification in violation of 18 U.S.C. §§ 1028(a)(7) and 1028(b)(3)(A); and (2) Count Two charges Defendant with possession of a listed chemical to manufacture a controlled substance in violation of 21 U.S.C. § 841(c)(2).   (*Id.*)

On July 17, 2014, Defendant entered into a plea agreement with the Government.   (ECF 1.)  The plea agreement provides that Defendant "will plead guilty to a violation of 18 U.S.C. § 1028(A)" and "[f]ollowing final disposition the United States will move the Court to dismiss the Indictment in Criminal Number 2:14-00092."   (*Id.* ¶ 3.)   The plea agreement includes a Stipulation of Facts, which provides the following, in relevant part:

> On September 20, 2013, defendant used a known person's driver's license to purchase pseudoephedrine at a pharmacy.  The pharmacy was located in Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia.  Defendant knew the known person, and he knew the known person was dead.  Defendant did not have authority, lawful or otherwise, to use the known person's identity.

> When defendant signed the known person's name to purchase the pseudoephedrine, he knew that the pharmacy kept a record of the people who purchased pseudoephedrine and a record of how much pseudoephedrine each person purchased.  Defendant intentionally used the known person's identity to purchase pseudoephedrine so law enforcement would not know his true identity as the actual purchaser.

(*Id.*, Ex. B at 1.)

On July 18, 2014, the Government filed a single-count Information charging Defendant with one count of aggravated identity theft in violation of 18 U.S.C. § 1028A.  (ECF 1.)  The Information further alleges that Defendant committed the predicate offense of making a false statement in violation of 18 U.S.C. § 1001 "[o]n or about September 20, 2013, at or near Charleston, Kanawha County, West Virginia."   (*Id.* at 2.)

3

On July 30, 2014, Defendant entered a written plea of guilty to the Information.   (ECF 5.)   On November 13, 2014, Defendant appeared before the Court for a sentencing hearing.   (ECF 10.)   During this hearing, the Court addressed the factual basis for the offense to which Defendant pled guilty, directed the parties to submit briefs regarding the factual basis for the plea, and continued the sentencing.   (ECF 13; *see also* ECF 12 (providing the order of the Court directing "the parties to file memorandum regarding the factual basis for Defendant's plea").)   Both parties subsequently filed their memoranda addressing the factual basis for the offense to which Defendant pled guilty on December 5, 2014.   (ECF 13 & 14.)

Defendant is currently scheduled to be sentenced by this Court on March 2, 2015.   (ECF 18.)

## II.   LEGAL STANDARD

Federal Rule of Criminal Procedure 11 provides that, "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."   Fed. R. Crim. P. 11(b)(3).   "[T]he Rule ensures that the court make clear exactly what a defendant admits to, and whether those admissions are factually sufficient to constitute the alleged crime."   *United States v. DeFusco*, 949 F.2d 114, 120 (4th Cir. 1991) (citing *United States v. Fountain*, 777 F.2d 351, 355 (7th Cir. 1985), *cert denied*, 475 U.S. 1029 (1986)).   "The requirement to find a factual basis is designed to 'protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'"   *United States v. Mastrapa*, 509 F.3d 652, 660 (4th Cir. 2007) (quoting Fed. R. Crim. P. 11, advisory committee's notes (1966)).

4

"In determining whether a guilty plea has a factual basis, the district court need not rely only on the Rule 11 plea colloquy." *Id.* Rather, the court "may conclude that a factual basis exists from anything that appears on the record." *Id.* (quoting *DeFusco*, 949 F.2d at 120).

"[T]he district court . . . 'need only be subjectively satisfied that there is a sufficient factual basis for a conclusion that the defendant committed all of the elements of the offense.'" *United States v. Ketchum*, 550 F.3d 363, 366 (4th Cir. 2008) (quoting *United States v. Mitchell*, 104 F.3d 649, 652 (4th Cir. 1997)). However, defendants do not have an "absolute right to have a guilty plea accepted," and the "court may reject a plea in exercise of sound judicial discretion." *Santobello v. New York*, 404 U.S. 257, 262 (1971). "The trial court has wide discretion in determining whether a factual basis exists." *United States v. Morrow*, 914 F.2d 608, 611 (4th Cir. 1990) (citing *United States v. Lumpkins*, 845 F.2d 1444, 1451 (7th Cir. 1988)).

### III.    DISCUSSION

Defendant pled guilty to a single-count Information charging him with aggravated identity theft in violation of 18 U.S.C. § 1028A. (ECF 6.) The Information further alleges that Defendant committed the predicate offense of making a false statement in violation of 18 U.S.C. § 1001. The Court first addresses the elements of the primary offense, then discusses the predicate offense.

### A.    Aggravated Identity Theft Under 18 U.S.C. § 1028A

The primary offense here is aggravated identity theft in violation of 18 U.S.C. § 1028A. Section 1028A provides the following:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

5

18 U.S.C. § 1028A(a)(1). "A conviction for aggravated identity theft under 18 U.S.C. § 1028A(a)(1) requires proof that the defendant '(1) knowingly transferred, possessed, or used, (2) without lawful authority, (3) a means of identification of another person, (4) during and in relation to a predicate felony offense.'" *United States v. Adepoju*, 756 F.3d 250, 256 (4th Cir. 2014) (quoting *United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010)). Under the knowledge requirement, "the government must prove that the accused knew that the 'means of identification' belonged to another person; an accused unaware that the means of identification refers to a real person cannot be guilty." *Id.* (citing *Flores-Figueroa v. United States*, 556 U.S. 646, 647 (2009)); *see also id.* (citing *United States v. Foster*, 740 F.3d 1202, 1207 (8th Cir. 2014)) ("Knowledge of existence is enough; the accused need not know the individual personally."). The phrase "without lawful authority" means "without a form of authorization recognized by law." *Abdelshafi*, 592 F.3d at 609. For purposes of this statute, "the term 'means of identification' means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." 18 U.S.C. § 1028(d)(7). This includes, among other things, a name or "official State or government issued driver's license or identification number." *Id.* § 1028(d)(7)(A).

The Court finds the first three elements of Section 1028A(a)(1) are satisfied in this case. On September 20, 2013, Defendant "intentionally used" the driver's license of a third party and signed that person's name to purchase pseudoephedrine. (ECF 6, Ex. B at 1.) The third party's driver's license is a "means of identification" for purposes of Section 1028A. 18 U.S.C. § 1028(d)(7)(A). Additionally, Defendant did not have "authority, lawful or otherwise" to use the third party's identity to execute the purchase of pseudoephedrine. (ECF 6, Ex. B at 1.) Finally, Defendant knew the driver's license referred to the third party, and Defendant "knew the known

6

person was dead." (*Id.*) These facts are sufficient to satisfy the first three elements of Section 1028A(a)(1). *See Adepoju*, 756 F.3d at 256 (quoting *Abdelshafi*, 592 F.3d at 607) (providing the elements for 18 U.S.C. § 1028A(a)(1)).

The remaining issue is the fourth element of the primary offense of aggravated identity theft under 18 U.S.C. § 1028A(a)(1).

**B.     The Predicate Offense—18 U.S.C. § 1001(a)(2)**

The final element of Section 1028A(a)(1) requires that a defendant committed the offense "during and in relation to a predicate felony offense." *Id.* (quoting *Abdelshafi*, 592 F.3d at 607). The phrase "during and in relation to" means that the act "must have some purpose or effect with respect to the" predicate offense and "cannot be the result of accident or coincidence." *United States v. Bailey*, 235 F.3d 1069, 1074 (8th Cir. 2000) (internal quotation marks and citation omitted) (discussing the definition of the phrase "during and in relation to," as used in 18 U.S.C. § 924(c)(1)).

The Information alleges that Defendant committed the instant offense "during and in relation to" the predicate offense "of making a false statement in violation of 18 U.S.C. § 1001." (ECF 1 ¶ 2.) The offense of making a false statement in violation of 18 U.S.C. § 1001 qualifies as a "felony violation enumerated in subsection (c)" of Section 1028A. *See* 18 U.S.C. § 1028A(c)(4) (providing that the phrase "felony violation enumerated in subsection (c)" includes "any provision contained in this chapter (relating to fraud and false statements), other than this section or section 1028(a)(7)").

18 U.S.C. 1001 provides the following, in relevant part:

[W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . .

7

. makes any materially false, fictitious, or fraudulent statement or representation . .
.

shall be guilty of an offense against the United States.   18 U.S.C. 1001(a)(2).   "The essential elements of a § 1001(a)(2) offense are, as follows:   1. [a] material statement or representation; 2. [w]hich is false, fictitious, or fraudulent; 3. [m]ade in a matter within the jurisdiction of a department or agency of the United States; and 4. [d]one knowingly and willfully."   *United States v. Stover*, 499 Fed. App'x 267, 272–73 (4th Cir. 2012) (citing *United States v. Camper*, 384 F.3d 1073, 1075 (9th Cir. 2004)).   "[T]he terms 'knowingly and willfully' modify only the making of 'false, fictitious or fraudulent statements.'"   *United States v. Yermian*, 468 U.S. 63, 69 (1984); *see also id.* at 75 (holding that "proof of actual knowledge of federal agency jurisdiction is not required under § 1001").

As discussed above, the record demonstrates that Defendant voluntarily and intentionally made a false statement when he used the identification of a third party to purchase pseudoephedrine from the Rite Aid Pharmacy on September 20, 2013.   (ECF 6, Ex. B at 1.) Defendant knew the identification did not belong to him and that it did belong to a third party. (*Id.*)   Accordingly, the mens rea and "false, fictitious or fraudulent" statement elements of Section 1001(a)(2) are met here.[1]   The two remaining elements—jurisdiction and materiality—warrant further discussion.

---

[1]  As noted above, the mens rea requirement of Section 1001 requires that Defendant both "knowingly and willfully" made the "false, fictitious or fraudulent statements."   *Yermian*, 468 U.S. at 69.   In *United States v. Daughtry*, the Fourth Circuit held the district court properly instructed the jury as to the meaning of "willfully" in Section 1001 when it provided the following:   "[a]n act is done willfully if it is done deliberately and intentionally as contrasted with accidentally, carelessly or unintentionally."   48 F.3d 829, 830–33 (4th Cir. 1995).   A majority of the courts of appeals similarly held that the "willfully" requirement of Section 1001 does not require that the defendant was aware of the statute or had a guilty state of mind.   *See United States v. Gonsalves*, 435 F.3d 64, 72 (1st Cir. 2006); *United States v. Russo*, 202 F.3d 283, at *5 (10th Cir. 2000) (citing *Walker v. United Sates*, 192 F.2d 47, 49 (10th Cir. 1951)); *United States v. Hsia*, 176 F.3d 517, 522 (D.C. Cir. 1999); *United States v. Hildebrandt*, 961 F.2d 116, 118 (8th Cir. 1992); *United States v. Hopkins*, 916 F.2d 207, 214 (5th Cir. 1990).

1.    The Jurisdiction Element

The requirement that the false statements "be made in a matter within the jurisdiction of a federal agency" is a "predicate circumstance" of the Section 1001 offense. *Yermian*, 468 U.S. at 69. A defendant does not have to provide the false statement or misrepresentation directly to a federal agency to satisfy the Section 1001(a) jurisdiction requirement. *See, e.g.*, *United States v. Jackson*, 608 F.3d 193, 197 (4th Cir. 2010) (finding the government satisfied the jurisdictional component of Section 1001 where the defendant made false statements on the timesheets of his employer—a subcontractor of a prime contractor performing work for the National Security Agency); *United States v. Hooper*, 596 F.2d 219, 222–24 (7th Cir. 1979) (holding that the district court did not err in denying the defendant's motion for a judgment of acquittal on the basis that he did not provide false statements directly to a federal agency).

The jurisdictional component of Section 1001 is satisfied here due to the nature of Defendant's false statements and the recipient of those statements. 21 U.S.C. § 830(e)(1)(A) requires "regulated seller[s]" of "scheduled listed chemical product[s] at retail" to "maintain . . . a

---

As discussed above, Defendant deliberately and intentionally used the identifying information of a third party to purchase pseudoephedrine. Accordingly, Defendant acted with the requisite scienter under the *Daughtry* "willfully" standard. *See Daughtry*, 48 F.3d at 830–33.

However, the Court recognizes that this is a quickly evolving area of law. A minority of the courts of appeals held that "willfully," as used in Section 1001, requires that a defendant deliberately engage in the forbidden conduct *and* possess a guilty state of mind. *United States v. Starnes*, 583 F.3d 196, 211 (3d Cir. 2009); *United States v. Bakhtiari*, 913 F.2d 1053, 1060 (2d Cir. 1990). In briefing for two cases before the Supreme Court, the Justice Department recently adopted the position of this minority of circuit courts that a defendant must possess a guilty state of mind to violate Section 1001. Br. for the United States in Opp'n at 10, *Ajoku v. United States*, No. 13-7264, 2014 WL 1571930 (U.S. Mar. 10, 2014) (quoting *Bryan v. United States*, 524 U.S. 184, 193 (1998)) ("To find that a defendant 'willfully' made a false statement in violation of [Section 1001], a jury must conclude 'that he acted with knowledge that his conduct was unlawful.'"); Br. for the United States in Opp'n at 6, *Russell v. United States*, No. 13-7357, 2014 WL 1571932 (U.S. Mar. 10, 2014) (same).

Although this Court favors the *Daughtry* approach to this issue, it appears likely that the Supreme Court will address the "willfully" standard under Section 1001 in the near future. *Ajoku v. United States*, 134 S. Ct. 1872 (2014) (remanding "for further consideration in light of the confession of error by the Solicitor General"); *Russell v. United States*, 134 S. Ct. 1872 (2014) (same). As such, and out of an abundance of caution, the parties should also address in their briefing whether Defendant had the scienter required to satisfy the "willfully" standard, as stated by the *Starnes* and *Bakhtiari* courts and adopted by the Justice Department.

written or electronic list of such sales that identifies the products by name, the quantity sold, the names and addresses of purchasers, and the dates and times of the sales (which list is referred to in this subsection as the 'logbook'), except that such requirement does not apply to any purchase by an individual of a single sales package if that package contains not more than 60 milligrams of pseudoephedrine." 21 U.S.C. § 830(e)(1)(A)(iii). For purposes of this section, the term "regulated person" includes "a person who . . . distributes . . . a listed chemical." *Id.* § 802(38). Pseudoephedrine is such a listed chemical. 21 U.S.C. § 802(34)(K) (providing that pseudoephedrine is a "list I chemical"). Rite Aid Pharmacy distributes listed chemicals, including pseudoephedrine, so Rite Aid Pharmacy is a "regulated person" for purposes of the Section 830(e)(1)(A)(iii) logbook requirement. *See id.* §§ 802(38) & 830(e)(1)(A)(iii).

21 U.S.C. § 830(e)(1)(D), in turn, explicitly provides that the jurisdiction requirement of Section 1001 is satisfied if someone enters information into the logbook. *Id.* § 830(e)(1)(D) ("For purposes of section 1001 of Title 18, entering information in the logbook under subparagraph (A)(iii) shall be considered a matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States."). This jurisdictional language encompasses purchasers of regulated substances if they provide false information that is then included in the logbooks. *Id.* § 830(e)(1)(v) ("The written or electronic logbook includes, in accordance with criteria of the Attorney General, a notice to purchasers that entering false statements or misrepresentations in the logbook, or supplying false information or identification that results in the entry of false statements or misrepresentations, may subject the purchasers to criminal penalties under section 1001 of Title 18, which notice specifies the maximum fine and term of imprisonment under such section.")

10

Defendant made a false statement when he used a third party's driver's license to purchase pseudoephedrine from Rite Aid Pharmacy on September 20, 2013, and signed that third party's name to effectuate the purchase.   (*See* ECF 6, Ex. B.)   Rite Aid Pharmacy was required by law to include information relating to the purchase of pseudoephedrine in its logbook.  *See, e.g.*, 21 U.S.C. § 830(e)(1)(A)(iii).   Additionally, Defendant was on notice regarding the potential illegality of his conduct because Rite Aid Pharmacy had a notice complying with Section 830(e)(1)(v) on the screen when Defendant signed for the purchases of pseudoephedrine.  (ECF 13 at 5 n.5; *see also id.*, Ex. 2 (providing a photo depicting the type of warning Rite Aid Pharmacy provides to purchasers of controlled substances in accordance with 21 U.S.C. § 830(e)(1)(v)).) The jurisdiction requirement of Section 1001(a) was thus satisfied when Defendant supplied "false information or identification" that was entered into Rite Aid Pharmacy's logbook and signed the name of a third party to complete the transaction.   *See* 21 U.S.C. §§ 830(e)(1)(D) & 830(e)(1)(v).

   2.   The Materiality Requirement

   The Government must also prove that Defendant's use of a third party's information to acquire pseudoephedrine constitutes a material statement or representation.   *See United States v. Stover*, 499 Fed. App'x 267, 272–73 (4th Cir. 2012) (citing *United States v. Camper*, 384 F.3d 1073, 1075 (9th Cir. 2004)).   For purposes of the materiality requirement under 18 U.S.C. § 1001(a)(2), "[t]he test of materiality is whether the false statement has a natural tendency to influence agency action or is capable of influencing action."   *United States v. Garcia-Ochoa*, 607 F.3d 371, 375 (4th Cir. 2010) (quoting *United States v. Norris*, 749 F.2d 1116, 1122 (4th Cir. 1984)); *see also United States v. Guadin*, 515 U.S. 506, 509 (1995) (providing the definition of materiality under Section 1001 as that "[t]he statement must have a natural tendency to influence,

11

or be capable of influencing, the decision of the decisionmaking body to which it was addressed")
(internal quotation marks and citation omitted).   The Government must also show that a specified
government entity that would find Defendant's false statements material either (1) received
Defendant's false information, directly or indirectly, *see, e.g.*, *United States v. Jackson*, 608 F.3d
193, 200 (4th Cir. 2010) (affirming the conviction of a defendant who made false statements on his
timesheets, which were then transmitted by a third party to the NSA); or (2) would have received
notice of Defendant's purchases, but for his false statement, *see United States v. Kwiat*, 817 F.2d
440, 446 (7th Cir. 1987) (Easterbrook, J.); *see also United States v. Ismail*, 97 F.3d 50, 61 (4th Cir.
1996) (citing *Kwiat* with approval); *United States v. King*, 660 F.3d 1071, 1081–82 (9th Cir. 2011)
(citing *United States v. Oren*, 893 F.2d 1057, 1064–65 (9th Cir. 1990)) (noting that, in *Oren*, the
court upheld the defendant's conviction because the National Park Service "could have been led to
[act] based on the false statement").

        Under the first potential showing, "there is no requirement that the false statement
[actually] influence or effect the decision making process of a department of the United States
government."   *Ismail*, 97 F.3d at 60 (internal quotation marks and citation omitted).   However,
under this approach, a false statement cannot have a "natural tendency to influence" agency action
and is not "capable of influencing" action if the relevant agency never receives the false statement
in any form.   *See id.* at 61 (discussing *Kwiat*).

        In this case, there is no evidence in the record that a specified government entity that would
find Defendant's false statement material ever received notice of that false statement.   As an
initial matter, the Indictment, Information, and plea agreement, do not mention any particular
government entity.   (*United States v. Lawrence*, 2:14-cr-92, ECF 1 & 2; ECF 1; ECF 6.)   Indeed,

the only reference to a government entity that might find Defendant's false statement material is in the parties' briefing on this topic, in which the parties indicate the Drug Enforcement Administration ("DEA") is the relevant federal entity for purposes of the Section 1001 analysis. (*See* ECF 13 at 3 n.2 & 8; ECF 14 at 6.)

Nonetheless, the record does not indicate the DEA or any other relevant federal entity was ever provided notice of Defendant's false statement.  Instead, the record indicates that West Virginia State Troopers performed the entire investigation, including accessing Rite Aid Pharmacy's logbook to identify Defendant's false statements.   (*See* PSR ¶¶ 9–20.)   The DEA had no involvement in this investigation, nor did any other agency of the federal government.   (*See id.*)   Additionally, the record does not indicate that any party provided notice to the DEA or another relevant federal entity regarding Defendant's false statements at any point during the investigation.   As such, Defendant's false statements could not have impacted the actions of a federal entity, regardless of whether that entity chose to act on the information.

The Government may alternatively show materiality here by demonstrating that a federal entity for which Defendant's false statements are material *would have* received notice of Defendant's purchases of pseudoephedrine, *but for* Defendant's false statements.  *See, e.g.*, *Kwiat*, 817 F.2d at 445–46 (citing *United States v. Bailey*, 734 F.2d 296, 305 (7th Cir. 1984)) (noting that the court in *Bailey* found a false statement was material where "[t]he truth would have led the [agency] to investigate").   The Court also finds this potential showing lacking here.

As discussed above, the retailer at issue in this case—Rite Aid Pharmacy—is a "regulated seller" for purposes of the logbook requirement.   21 U.S.C. § 830 includes mandatory reporting requirements for "regulated person[s]," including the following potentially relevant provisions:

13

> (1) Each regulated person shall report to the Attorney General, in such form and manner as the Attorney General shall prescribe by regulation –
>
> (A) any regulated transaction involving an extraordinary quantity of a listed chemical, an uncommon method of payment or delivery, or any other circumstance that the regulated person believes may indicate that the listed chemical will be used in violation of this subchapter; [and]
>
> (B) Any proposed regulated transaction with a person whose description or other identifying characteristic the Attorney General furnishes in advance to the regulated person . . . .

21 U.S.C. § 830(b)(1).   However, if one of these triggering events does not occur, the "regulated person" is under no requirement to report a suspect purchase.   *See id.*; *see also United States v. Towns*, 718 F.3d 404, 417 n.7 (5th Cir. 2013) (Graves, J., dissenting) ("[A] retailer is not maintaining the logs in an attempt to prove it did not sell pseudoephedrine to a purchaser forbidden by law. . . .   [A] retailer is not even maintaining the logs to ensure that it does not sell pseudoephedrine to someone who has already purchased a daily or monthly allotment.   Rather, a retailer is merely complying with the requirement of keeping the records, without analyzing or relying on them and with no incentive to ensure accuracy, for the Government to possibly later use for some law enforcement purpose.")   Absent this reporting mechanism, the only way the information in logbooks is given to a federal agency is if they request it.

There is no evidence in the record that Defendant's purchases, even if made with his own identifying information, would have triggered this mandatory reporting scheme.   The record does not indicate that Defendant's purchase on September 20, 2013 would have qualified as "an extraordinary quantity" for purposes of 21 U.S.C. § 830(b)(1)(A).   21 U.S.C. § 830(d) provides that "the quantity of pseudoephedrine base sold at retail in such a product by a regulated seller . . . may not, for any purchaser, exceed a daily amount of 3.6 grams, without regard to the number of

transactions."   West Virginia law further restricts the sale of pseudoephedrine to 7.2 grams in a "thirty-day period" and 48 grams in a year.   W. Va. Code § 60A-10-4.

On the date of the instant offense, Defendant only "attempted to purchase a 3.6 gram box of pseudoephedrine from the Rite-Aid Pharmacy in Kanawha City."   (ECF 14 at 4.)   Defendant was unsuccessful in this purchase because the identification Defendant used was also used to make other purchases that exceeded the total amount permissible under W. Va. Code § 60A-10-4.   (*Id.*)   Defendant was, however, "able to purchase a 2.4 gram box of pseudoephedrine."   (*Id.*)   There is no indication in the record that Defendant's small attempted or executed purchase of pseudoephedrine on September 20, 2013 would have triggered the "extraordinary quantity" reporting requirement under 21 U.S.C. § 830(b)(1)(A).

Similarly, there is no evidence that Defendant provided an "uncommon method of payment or delivery," or that the "any other circumstance" catch-all language of Section 830(b)(1)(A) applied to Defendant's attempted or executed purchase on September 20, 2013.   Furthermore, there is no evidence in the record that the Attorney General provided Rite Aid Pharmacy with Defendant's identifying information, so Section 830(b)(1)(B) also does not apply here.   As such, the record indicates that Rite Aid Pharmacy was under no statutory requirement to notify any federal agency regarding Defendant's purchase on September 20, 2013, even if he used his own identifying information.

The record is similarly devoid of any information that would indicate Rite Aid Pharmacy would have notified a federal agency regarding Defendant's September 20, 2013 purchase pursuant to some company policy or other mechanism beyond the Section 830 mandatory reporting provisions.   Additionally, there is no evidence in the record that a federal entity would

15

have received notice of Defendant's purchase, absent Defendant's use of false information, by some other means.

If, as it currently stands, no agency of the federal government received the false statement—directly or indirectly and in any form—or would have received notice of Defendant's purchases of pseudoephedrine, even if he used his own identification, then this information has *no potential* to influence the actions of a federal entity.   *See Kwiat*, 817 F.2d 440, 445 (7th Cir. 1987) (Easterbrook, J.) ("Deliberately using the wrong" information does not violate Section 1001 "unless the right [information] could be important."); *see also United States v. Garcia-Ochoa*, 607 F.3d 371, 375 (4th Cir. 2010) (quoting *United States v. Norris*, 749 F.2d 1116, 1122 (4th Cir. 1984)) (providing the materiality standard under Section 1001).   Instead, it is merely a private individual providing false statements to a private entity that is under no obligation to provide that information to a federal entity.   That is not an offense under 18 U.S.C. § 1001(a)(2).[2]

If the Government fails to prove that there is a factual basis for the predicate offense under Section 1001(a)(2), it correspondingly fails to prove Defendant committed the primary offense "during and in relation to" the predicate offense under the fourth element of 18 U.S.C. § 1028A. *See United States v. Adepoju*, 756 F.3d 250, 256 (4th Cir. 2014) (providing the elements of 18 U.S.C. § 1028A).

## IV.   Conclusion

For the foregoing reasons, the Court **FINDS** the current record does not provide a factual basis for the materiality requirement of the predicate offense of making a false, fictitious or

---

[2] The fact that Rite Aid has to keep its logbooks available for inspection by the DEA and other agencies does not, by itself, make the content of those logbooks material under Section 1001.  *See, e.g. King*, 660 F.3d at 1081 (9th Cir. 2011) ("§ 1001(a)(2) cannot be read so broadly as to incorporate any false statement made to anyone regarding matters pertinent to the federal government.").

fraudulent statement or representation "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States" under 18 U.S.C. § 1001(a)(2).  The Court **DIRECTS** the parties to file additional briefing addressing the factual basis for the materiality requirement of 18 U.S.C. § 1001(a)(2) no later than March 13, 2015. Specifically, the parties shall address the following in their briefing:   (1) the entity of the federal government to which Defendant's false statement on September 20, 2013 is material; (2) whether this entity received Defendant's false statement, either directly or indirectly; (3) whether this entity would have received information regarding Defendant's purchase of pseudoephedrine, but for Defendant's false statement; and (4) whether Defendant's false statement "has a natural tendency to influence [that entity's] action or is capable of influencing [that entity's] action," *Garcia-Ochoa*, 607 F.3d at 375 (quoting *Norris*, 749 F.2d at 1122).

If the Government fails to prove the essential materiality element of the predicate offense, the Court will reject Defendant's plea.  *See United States v. Gaudin*, 515 U.S. 506, 509 (1995) (stating that a conviction under Section 1001 "requires that the statements be 'material' . . . and that 'materiality' is an element of the offense that the Government must prove").

For the reasons provided above, the sentencing hearing currently scheduled for March 2, 2015 is **CONTINUED** to **April 16, 2015 at 10:00 a.m.**

**IT IS SO ORDERED**.

17

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.


ENTER:        February 27, 2015


_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

18